NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

January 8, 2021

Olumide Ogunremi
Register No. 341602
Hudson County Correctional Facility
30-35 Hackensack Ave.
Kearny, NJ 07032
*Pro Se*

Sophie E. Reiter, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:**     *United States v. Ogunremi*
            **Criminal Action No. 18-586 (SDW)**

Counsel:

Before this Court is Defendant Olumide Ogunremi's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 32.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

## DISCUSSION

### A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where "extraordinary and compelling reasons" exist to reduce a sentence. The statute provides, in relevant part, that:

(A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c) (emphasis added).   Therefore, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).   Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On February 20, 2020, Defendant plead guilty to participating in a conspiracy to commit wire fraud in violation of 18 U.S.C. Section 1349.   (*See, e.g.*, D.E. 27; D.E. 33 at 2.)   Defendant's plea inculpated him in an intricate criminal conspiracy, wherein he and his coconspirators conducted phishing attacks on the federal government, gained federal employees' login credentials, made fraudulent purchases using stolen credit cards or other falsified billing sources, and shipped the illegally purchased goods to other addresses.   (D.E. 33 at 2.)   Eventually, those same goods were resold for a profit.   (*Id.*)   In an attempt to avoid prosecution for his involvement in this conspiracy, Defendant initially fled to Canada.   (*Id.*)   Ultimately, Defendant was extradited back to the United States.   (*Id.*)

On or around August 20, 2020, Defendant filed a *pro se* motion requesting compassionate release, on the basis that he suffers from medical and mental health conditions that make him vulnerable to severe illness if he is infected by the COVID-19 virus.[1]   (D.E. 32.)   On September 23, 2020, Defendant was sentenced to thirty-six months' imprisonment and two years of

---

[1] This Court has construed Defendant's motion for compassionate release liberally.   *See Merritt v. Blaine*, 326 F.3d 157, 164 (3d Cir. 2003).

supervised release.[23]  (D.E. 31; D.E. 33 at 3.)  On December 8, 2020, the Government opposed Defendant's motion for compassionate release.  (D.E. 33.)

C.

Exhaustion is a statutory requirement that this Court may not waive.  *See, e.g.*, *Raia*, 954 F.3d at 957; *Massieu v. Reno*, 91 F.3d 416, 419 (3d Cir. 1996); *Ross v. Blake*, 136 S. Ct. 1850 (2016).  Here, a "glaring roadblock" impedes Defendant's request for compassionate release: he has failed to exhaust administrative remedies prior to filing with this Court.  *See Raia*, 954 F.3d at 957.  The record demonstrates that Defendant has not yet applied to the director of Hudson County, or to any BOP administrative official, for administrative relief.  (*See* D.E. 32; D.E. 33.)  Thus, Defendant's motion must be denied because it was not filed after he had "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also Raia*, 954 F.3d at 957; *Epstein*, 2020 WL 1808616, at *2.  Defendant is incorrect in insisting that because he is not currently housed at MCI, satisfying the exhaustion requirement would be "impossible."[4]  (D.E. 32 at 12 (arguing that the District Court "can consider anything … the BOP could have considered"); *id.* at 82 (asking this Court to "waive" the exhaustion requirement); *see United States v. Moore*, Crim. No 19-101, 2020 WL 4282747, at *1 (D.N.J. July 27, 2020) (determining that claims were properly exhausted where a defendant, who was temporarily housed in Hudson County, filed his administrative request for compassionate release with his temporary warden).)

Similarly, Defendant's concerns regarding the BOP's COVID-19 and compassionate release policies do not entitle him to early release.  (D.E. 32 at 2 (arguing that the BOP "rarely exercise[s] [its] discretion to release individuals").)  Defendant has been housed at Hudson County for months but has not presented evidence of an attempt to request compassionate release from that facility's warden.  (*See* D.E. 32.)  Thus, this Court lacks jurisdiction over Defendant's case, and it must be dismissed.[5]  *See, e.g.*, *Byrne v. Ortiz*, Crim. No. 20-12268, 2020 WL 7022670, at

---

[2] To the extent that, in the alternative, Defendant requests that this Court consider his motion as one for a reduction of sentence under 28 U.S.C. Section 2255, *see* D.E. 31 at 2, his request would be untimely and frivolous.  *Conway v. United States*, Civ. No. 09-4578, 2010 WL 2757364, at *2 (D.N.J. July 8, 2010).  Defendant offers no support or detail regarding his purported Section 2255 filing, which disputes his "September 3, 2020" sentence, despite his motion having been filed on August 20, 2020, prior to his September 23, 2020 sentencing by this Court.  (D.E. 31 at 2; *United States v. Case*, 684 F. Supp. 109, 113 (D.N.J.), aff'd, 866 F.2d 1413 (3d Cir. 1988).)

[3] The BOP intends to have Defendant serve his sentence in McRae Correctional Institute ("MCI") in Georgia.  (D.E. 33. at 3.)  However, at the time that Defendant filed this motion for compassionate release, he had not yet been transferred to MCI and remained temporarily housed at Hudson County Correctional Facility ("Hudson County").  (*Id.*)  As of December 2020, Defendant had served roughly eighteen months of his sentence, in part while awaiting extradition from Canada.  (*Id.*)

[4] Defendant could have taken the "the logical course of filing his compassionate release applications with his custodian, the director of HCCC," and through that avenue exhausted his claims.  *United States v. Moore*, Crim. No 19-101, 2020 WL 4282747, at *1 (D.N.J. July 27, 2020).  Nowhere in his nearly one-hundred-page filing does Defendant state that he filed a request for reduction of sentence with the Hudson County warden.  (*See* D.E. 32.)

[5] In fact, Defendant's prolific brief, which raises dozens of worrying allegations related to the BOP's administrative choices in response to COVID-19, "fits squarely within the parameters of the purposes of exhaustion."  *Furando*, 2020

3

*4 (D.N.J. Nov. 30, 2020) ("[T]he Third Circuit require[s] the exhaustion of administrative remedies.") (citation omitted); *see also Dorsett v. United States*, Crim. No. 12-401, 2020 WL 7310564, at *3 (E.D. Pa. Dec. 11, 2020).

Because Defendant has not exhausted his administrative remedies, this Court may not consider the merits of his motion at this time. However, even if Defendant were to cure these jurisdictional defects, his application contains other hurdles that would likely bar his request for compassionate relief. *See United States v. Viteri*, Crim. No. 19-44, 2020 WL 3396804, at *3 (D.N.J. June 19, 2020) (noting that compassionate release is "a rare event") (citation omitted). This Court will briefly summarize those additional impediments.

First, Defendant's circumstances seem unlikely to establish the "compelling and extraordinary reasons" necessary to justify early release.[6] *See Epstein*, 2020 WL 1808616 at *2; *cf. Viteri*, 2020 WL 3396804 at *4 (even "affliction with various medical conditions [can be] insufficient to justify compassionate release [as] ... the threshold question is whether defendant has demonstrated 'extraordinary and compelling' reasons"). Here, Defendant avers that he suffers from various "medical and mental health conditions," arguing that these conditions "place him at in increased risk of serious illness or death" if infected with COVID-19. (*See* D.E. 32 at 3.) These conditions include: hypertension; obesity[7]; childhood asthma; PTSD; and psychotic disorders. (D.E. 32 at 21-22.)

The CDC acknowledges that obesity is a risk factor for severe illness from COVID-19. CDC, *People With Certain Medical Conditions* (last updated Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Evidence suggests that hypertension "might" place individuals at an increased risk.[8] (*Id.*) Similarly, asthma "might" be a risk factor. (*Id.*) Further, Defendant only notes that he suffered from episodes of asthma in childhood. (D.E. 32 at 28; *but see* D.E. 33, 8 n.2 (noting that Defendant's medical records provide "no evidence" of any history of asthma).) Hudson County seems to be providing adequate care for these conditions. (*See* D.E. 33-1, 33-2.) Thus, the record suggests that Defendant's medically supportable conditions—obesity and hypertension—are unlikely to amount

---

WL 3264161 at *3; *Byrne*, 2020 WL 7022670 at *4 (petitioner's motion "dispute[d] the BOP's efforts in controlling the spread" of COVID-19, which demonstrated "the need for 'Petitioner to attempt to resolve this at the administrative level first'" and "develop a factual record"). Defendant's correctional facility "should have an opportunity to correct [its] own mistakes." *Byrne*, 2020 WL 7022670 at *4.

[6] Although Defendant argues that his case "differs substantially" from *United States v. Moore*, the case offers a useful comparison. *United States v. Moore*, Crim. No. 19-101, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020) (denying application for compassionate release even though defendant had served much of his sentence and suffered from conditions including obesity and hypertension). Here, like in *Moore*, although the Defendant's "medical impairments [we]re indeed [real] risk factors … they appear to be appropriately cared for and under control." (*Id.*) Thus, "it is not clear that release would dramatically improve the defendant's chances of avoiding infection." (*Id.*)

[7] Although Defendant claims that he suffers from severe obesity, his weight seems to place him in the "obese" category, rather than "severely obese." (*Compare* D.E. 32 *to* D.E. 33 at 8.)

[8] *United States v. Sanders*, which Defendant relies on, is inapposite. There, the Defendant had filed a Motion for Release from custody, pursuant to 18 USC §§ 3143 and 3145(c), requesting home confinement for pretrial detention, and had not moved under the FSA. Crim. No. 19-20288, 2020 WL 1904815, at *1 (E.D. Mich. Apr. 17, 2020).

4

to "compelling and extraordinary reasons" that warrant release.  *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (where the BOP was "adequately managing Defendant's medical care," his hypertension and obesity did not require compassionate release).

Defendant's mental health conditions also seem unlikely to increase Defendant's risk of severe complications from COVID-19.  Defendant states that he suffers from "PTSD" which has contributed to his "mental distress."  (D.E. 32 at 22.)  Defendant also avers that he suffers from "unspecified schizophrenia spectrum and other psychotic disorder[s]" and takes "[R]emron" for his symptoms.  (*Id.* at 23.)  Nonetheless, it seems that Defendant is receiving adequate care for these conditions from Hudson County.  (D.E. 33 at 9.)  Further, Defendant's mental health treatment does not involve drugs that suppress his immune system.  (*Id.*)  More now than ever, this Court is sympathetic to Defendant's statement that he has "somewhat precarious mental health," which is "deteriorating because of COVID-19."  (D.E. 32 at 21.)  However, Defendant has not presented an explanation for how he would be safer, or more mentally stable, once removed from his access to regular medical care.[9]

Similarly, although Defendant documents extensive statistics related to COVID-19, he fails to explain how those statistics increase his individual risk of contracting the disease at Hudson County.  (*See, e.g.*, D.E. 32 at 4-5.)  Although this Court acknowledges that the early case count at Hudson County was extremely concerning, Defendant seems to concede that the facility had only one positive test for active COVID-19 as of November 2020.  (D.E. 32 at 13-14; D.E. 33-3, ¶ 20)  The Government has also detailed the policies and procedures put in place at Hudson County to protect inmates.[10]  (*See, e.g.*, D.E. 33 at 10; D.E. 33-3; *cf. Christian Asmed B. v. Decker*, 460 F.

---

[9] Defendant also states that he believes he contracted COVID-19 in early 2020.  (D.E. 32 at 39 (stating that he "reported chills, headaches, sore throat, loss of smell and taste, cough and was short of breath…"); *id.* at 52 (stating that the "presence" of "Mr. Ogunremi's other symptoms of COVID-19 were ignored"); *id.* at 81.)  It concerns the Court that Defendant was not tested for COVID-19 at that time, or seemingly at any time since.  There is, however, no suggestion that Defendant is still suffering from the symptoms he reported in the spring.  Thus, although the story remains concerning, this Court struggles to see how Defendant's possible illness, somewhere between six to eight months prior, provides support for his compassionate release application.  *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 658 (E.D. Pa. 2020) (denying release to individual who had previously contracted COVID-19); *United States v. Russo*, 454 F. Supp. 3d 270, 279 (S.D.N.Y. 2020) (same).

[10] This Court does not take Defendant's allegations regarding Hudson County's treatment of potential COVID-19 cases lightly.  (D.E. 32 at 26-27.)  Defendant alleges that detainees were not isolated, tested, or quarantined, which placed inmates at significant risk.  (*Id.* at 26-27.)  Further, this Court notes that some external evidence suggests that the briefing (*see* D.E. 33-3) is already outdated, and that the case count at Hudson County has risen since November 2020.  John Heinis, *Hudson County jail has 17 inmates test positive for COVID-19, including 8 on Christmas Eve* (last updated Dec. 26, 2020), https://hudsoncountyview.com/hudson-county-jail-has-17-inmates-test-positive-for-covid-19-including-8-on-christmas-eve/.  The rising case count at Hudson County provides some support for Defendant's allegations.  Nonetheless, although this Court is sympathetic to Defendant's concerns regarding certain policies and procedures at Hudson County, to the extent that Defendant's motion includes generalized "accus[ations]" directed at Hudson County, the FSA is an inappropriate vehicle for these complaints.  (*See, e.g.*, D.E. 32 at 58.)  Further, a developed factual record from administrative filings would assist this Court in assessing Defendant's allegations, as well as provide Hudson County with an opportunity to adjust or improve its procedures.  This Court is hopeful that Hudson County has acted quickly to test and quarantine sick individuals.  Nonetheless, should the outbreak significantly worsen and the individual risk to Defendant increase, Defendant retains the right to refile his motion.

Supp. 3d 519, 531 (D.N.J. May 19, 2020) (granting petitioner's motion for compassionate release, because the facility had "no specific protocols in place to protect the most medically-vulnerable people in their custody").)  To the extent that Defendant asserts that the policies touted in the Government's brief are not actually in place, it would be appropriate for him to first raise his complaints with Hudson County itself.  (*See* D.E. 32.)

Lastly, the Section 3553(a) factors also seem to weigh against granting Defendant's request for early release.  *See* 18 U.S.C. § 3553(a); 18 U.S.C. § 3582(c)(1)(A).  Defendant states that he "poses a minimal likelihood of recidivism" and "does not pose danger to the community." (D.E. 32 at 85.)  He also argues that the severity of his sentence has been "sufficiently increased" due to the COVID-19 outbreak, thereby entitling him to a reduction.  (*Id.*)  Lastly, Defendant notes that he has received "zero disciplinary reports while at Hudson," and has "significant ties to his community supporting his reentry."  (*Id.* at 88.)  However, due to Defendant's central role in coordinating fraudulent phishing attacks on the United States Government, it is important that his sentence "reflect the seriousness of th[at] crime." 18 U.S.C. § 3553(a).  Additionally, Defendant's "history and characteristics" include his brazen attempt to avoid the consequences of his actions by fleeing to Canada, which resulted in his extradition back to the United States.  (*Id.*)  Thus, this Court believes that the Section 3553(a) factors likely weigh in favor of retaining Defendant's current sentence, which should be served out as currently imposed.[11]

Pursuant to Section 3582(c)(1)(A), Defendant must first present his request to administrative officials to allow them to evaluate his current circumstances in light of COVID-19 concerns.[12]  As Defendant has failed to do so, this Court lacks jurisdiction over his motion, which must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's request for compassionate release is **DENIED** without prejudice.  An appropriate order follows.



/s/ Susan D. Wigenton

---

[11] To the extent that Defendant requests a conversion of the remainder of his sentence to home-confinement, this Court declines to do so.  First, this Court does not have the authority to order such relief, but it does have the authority to issue a recommendation to the BOP.  *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the Bureau of Prisons at any time").  Nonetheless, this Court declines to issue a recommendation at this time.  Defendant largely articulates a generalized fear of COVID-19, while simultaneously stating that he overcame the disease at least six months ago.  (*See* D.E. 32.)  He seems to be receiving adequate medical care at Hudson County, and does not seem to suffer from conditions, besides his obesity, that clearly increase his risk of COVID-19 complications.  Furthermore, as many of his complaints rest on the policies and procedures at Hudson County, the BOP is best positioned to evaluate whether they justify placement in home confinement.

[12] The Court acknowledges that there may be a situation where the risk to a prisoner, either through greatly increased disease positivity rates or individual health concerns, is so extreme that exhaustion of administrative remedies is futile.  However, these concerns to do not seem to clearly exist at Hudson County.  *See Furando v. Ortiz*, Crim. No. 20-3739, 2020 WL 3264161, at *2 (D.N.J. June 17, 2020).

**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties